FILED IN CHAMBERS
U.S.D.C. - Atlanta

DEC 02 2015

James N. Hatten, Clerk
By: *signature* Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>THOMAS MCLEAN HENDLEY | CRIMINAL CASE NO.<br>1:14-CR-453-ODE-JSA |

ORDER

This criminal case comes before the Court on Defendant Thomas McLean Hendley's Objections [Doc. 49] to United States Magistrate Judge Justin S. Anand's Final Report and Recommendation ("R&R") [Doc. 45]. The R&R recommends that this Court deny Hendley's Preliminary Motion to Suppress Evidence obtained from Hendley's cell phone [Doc. 15]. For the reasons stated below, Hendley's objections are OVERRULED, and the R&R is ADOPTED IN FULL.

I.  **Factual Background**

The R&R presents the facts of this case based on an evidentiary hearing held before Judge Anand on July 13, 2015 [Docs. 36, 38]. During that hearing, Judge Anand admitted into evidence an exhibit that contained the search warrant used to search Hendley's property and the supporting affidavit filed with the warrant [Doc. 37, 47-3]. The parties do not object to the R&R's statement of facts. Not being clearly erroneous, the operative facts are adopted by this Order and summarized below.

Hendley's charges and present suppression motion stem from his possession of over 8,000 files of child pornography. These files were found during a search performed, pursuant to a warrant, on Hendley's cell phone on September 3, 2014.

A.  **The Warrant**

Hendley's motion centers on a warrant issued by United States Magistrate Judge E. Clayton Scofield III on August 22, 2014. The warrant application was presented to Judge Scofield by Special Agent Michael L. Ashley of Homeland Securities Investigations, Immigration and Customs Enforcement ("HSI"). Agent Ashley included an affidavit with the warrant application that explained that he was requesting the warrant to investigate Hendley for the illegal activities relating to the possession, receipt, and distribution of child pornography. The affidavit explained that Hendley became involved in a child pornography investigation when an HSI agent in an unrelated investigation determined that child pornography had been sent to an email address which contained Hendley's cell phone number [Doc. 47-3 at 6-9]. Judge Scofield reviewed the request and signed the warrant on August 22, 2014.

The warrant's specific language authorized agents to "search for and seize" certain property, which was defined in an attachment to the warrant identified as "Attachment B," from a Douglasville, Georgia residence as defined in "Attachment A." Attachments A and B were included by Agent Ashley in his affidavit for a search warrant, and were fully adopted and integrated into the warrant.

Attachment A includes the specific address of the residence, a description of the structure on the property, and a picture of the property. Attachment B begins by stating that the affidavit supports an application "for a warrant <u>to search</u> [the property], which is more specifically identified in Attachment A, hereto, <u>including</u> any computers, associated storage devices, and/or other devices located therein that can be used to store information and/or connect to the

Internet, including cellular telephones" [Id.] (emphasis added). The sentence continues by stating that the areas described can be searched "for materials . . . more specifically identified below," before listing eighteen categories of materials which are authorized by the warrant. These categories of materials include evidence and records of child pornography in either physical or digital format, as well as any tapes, discs, or any device that may store child pornography.

   B.   **The Search**

Based on the warrant, Agent Ashley conducted a search at Hendley's property on September 3, 2014 at approximately 6:30 a.m. Agents found Hendley's cell phone in his bedroom. Once the cell phone was discovered, the agents called in Agent Cory Brant to take charge of the device. Agent Brant was part of the group conducting the search, and possesses specialized knowledge in computer forensics. Agent Brant retrieved the phone and performed a "logical" extraction, in which the investigator uses forensic software to review the data a casual user would be able to access. This extraction took ten to fifteen minutes and yielded no evidence of child pornography. Agent Brant then kept the phone and, upon returning to his office after leaving Hendley's property, performed a "physical" extraction, which uses the same forensic software to accesses files otherwise unaccessible through a logical extraction, such as deleted files. The physical extraction took four to five hours, and yielded over 8,000 images of child pornography on Hendley's cell phone.

During the evidentiary hearing before Judge Anand, Agent Brant explained that a normal search of a cell phone would include multiple

searches, including a logical extraction and a physical extraction [Transcript of Suppression Hearings ("Tr."), Doc. 38, at 34-35]. Agent Brant's training also dictated continuing the search "because those three extractions[1] you will see different results when you load it" [Id.]. Two issues kept Agent Brant from performing the physical extraction at Hendley's property: (1) Agent Brant lacked the necessary cable to perform the extraction; and (2) a physical extraction is "something that we're not going to typically do on scene just because of the timeframe" [Id. at 35, 38].

## II.  Procedural History

On December 16, 2014, the United States of America ("Government") filed an indictment against Hendley [Doc. 1]. The two-count indictment charged Hendley with receipt of child pornography and possession of child pornography in violation of various sections of 18 U.S.C. §§ 2252(a)-(b).

Hendley subsequently filed a motion captioned as "Defendant's Preliminary Motion to Suppress Evidence" on January 16, 2015 [Doc. 15]. Hendley first argued that any evidence collected against him was done without a valid warrant, as the warrant used in this case was based on allegedly stale information. Hendley also argued that the warrantless search of his cell phone ran afoul of Riley v. California, — U.S. —, 134 S. Ct. 2473 (2014).

Hendley supplemented his first motion with a brief filed on March 18, 2015 [Doc. 21]. In this brief Hendley abandoned his initial staleness argument and instead argued that the plain language

---

[1] The third extraction, a file system extraction, was not performed on Hendley's cell phone.

of the warrant did not authorize a search of his cell phone. Hendley continued to assert that the resulting warrantless search of his phone was unconstitutional under Riley. The Government responded on April 16, 2015 [Doc. 31], and Hendley replied on April 24, 2015 [Doc. 32]. In his reply, Hendley asked the Court to stop its legal analysis and grant an evidentiary hearing because of the emergence of factual questions as to when the pornographic material was discovered on his phone. Hendley's request was granted [Doc. 33], and an evidentiary hearing took place on July 13, 2015 [Doc. 36].

Following this evidentiary hearing, Hendley filed a "Post-Hearing and Reply Brief in Support of the Motion to Suppress Evidence" which presented his finalized arguments for suppression [Doc. 40]. In addition to his arguments based on the plain language of the warrant and Riley, Hendley now asserted that the physical extraction was a second, separate search from the initial search of his property which was not authorized by a warrant. The Government responded [Doc. 43].

United States Magistrate Judge Justin S. Anand ultimately issued the R&R presently before this Court, recommending denial of Hendley's motion [Doc. 45]. Judge Anand first concludes that because the search of Hendley's phone was analogous to searching a container, the warrant authorizes a search of the cell phone under United States v. Ross, 456 U.S. 798 (1982). Judge Anand addresses Hendley's reliance on Riley by noting that the question presented in that case concerned a warrantless search of a cell phone, whereas the agents in Hendley's case had a warrant and were acting on the warrant when they searched his phone. Judge Anand also concludes that the search which revealed the incriminating child pornography was part of a single, continuous

search that began at Hendley's residence and ended at the forensic laboratory.

Hendley timely filed his objections to the R&R [Doc. 49], and the issue is now ripe for review.

### III. Legal Standard

Pursuant to 28 U.S.C. § 636(b)(1), the Court must conduct a de novo review of those portions of the R&R to which the parties object. The Court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); United States v. Raddatz, 447 U.S. 667, 673-74 (1980). For a party's objections to warrant de novo review, the party "must clearly advise the district court and pinpoint the specific findings that the party disagrees with." United States v. Schultz, 565 F.3d 1353, 1360 (11th Cir. 2009). The remainder of the R&R, to which neither party offers specific objections, will be assessed for clear error only. See Tauber v. Barnhart, 438 F. Supp. 2d 1366, 1373 (N.D. Ga. 2006) (Story, J.).

The Fourth Amendment requires that search warrants "particularly describe the place to be searched and the terms or person to be seized" and "[o]nly items described in the search warrant may be seized." United States v. Jenkins, 901 F.2d 1075, 1081 (11th Cir. 1990). The particularity requirement prevents "general, exploratory rummaging in a person's belongings," Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971). This requirement does not necessitate technical perfection; instead, it is applied with "a practical margin of flexibility." United States v. Wuagneux, 683 F.2d 1343, 1349 (11th Cir. 1982).

Where a warrant has been issued, "[a] lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." United States v. Ross, 456 U.S. 798, 820-21 (1982). Key to the Court's analysis is "whether the search and seizures were reasonable under all the circumstances." United States v. Schandl, 947 F.2d 462, 465 (11th Cir. 1991).

## IV. Hendley's Objections

Hendley objects generally to Judge Anand's legal conclusions that the search warrant authorized the search of Hendley's cell phone and that Agent Brant could perform the physical extraction on the cell phone in his office. Hendley's objections appear to recycle many of the arguments presented in his earlier briefing without tying the arguments to the substance of Judge Anand's opinion. Nevertheless, Hendley pinpoints three specific aspects of Judge Anand's opinion with which he disagrees. First, Hendley argues that Judge Anand failed to fully analyze Hendley's argument that the plain language of the warrant did not authorize a search of Hendley's cell phone. Second, Hendley disputes Judge Anand's reliance on United States v. Ross and the categorization of a cell phone as a container that can be searched for contraband. In relying on Ross, Hendley argues that Judge Anand did not give sufficient weight to the language of Riley v. California in the sense that cell phones are different. Finally, Hendley argues that Judge Anand incorrectly determined that Agent Brant continued his search of the cell phone when he brought it back to the office to perform the physical extraction.

A.   **The Plain Language of the Warrant**

Hendley first argues that the plain language of the warrant does not include a search of his cell phone. The argument centers on a sentence in the warrant which states "I find that this affidavit establishes probable cause to search for and seize the certain property from the property described above." Because the phrase "certain property" refers to the items discussed in Attachment B, and the phrase "property described above" refers to his address, Hendley argues that agents were allowed to "search for and seize" his cell phone, but not search the cell phone once seized by agents.

Hendley buttresses his argument by noting that the affidavit provided by Agent Ashley appeared to request permission to search any computers and cell phones found as a result of searching Hendley's property. The language of the warrant, however, only authorizes the agents to search the items listed in Attachment A, which is limited to Hendley's property. Judge Scofield, according to Hendley, therefore signed a warrant with a narrower scope than the search proposed in the affidavit. In order to give effect to this narrowing by Judge Scofield, Hendley asks this Court to give meaning to both the words of the warrant and Judge Scofield's decision to keep the warrant narrow by finding that the warrant did not authorize the search of Hendley's cell phone.

The Court disagrees. First, Hendley's interpretation of the plain language of the warrant leaves out a key passage of the warrant. The initial paragraph of Attachment B states that the warrant seeks "to search the premises . . . <u>including any computers . . . including any cell phones</u>." Attachment B clearly states that the search included computers and cell phones found in Hendley's

-8-

residence. The language adopted by the warrant, which incorporated Attachment B, therefore authorized a search of the cell phone found at Hendley's residence.

Hendley's attempts to presume what exactly Judge Scofield meant in signing the warrant are also unpersuasive. Hendley repeatedly cites the plain language of the warrant as evidencing Judge Scofield's intent to narrow the scope of the warrant to searches of the property and not his cell phone. But at no point does Hendley demonstrate, or present any evidence, that the final warrant signed by Judge Scofield differs in any material way from the warrant Agent Ashley attached to his affidavit when first requesting the warrant. Judge Scofield appears to have simply signed the warrant, and did not limit or narrow the scope of the warrant as Hendley claims.

Finally, and most persuasively, Hendley's interpretation of the requirements of a warrant would create an unworkable standard. Hendley does not dispute that the warrant allows a search of his property, or that the warrant allowed agents to "search for and seize" evidence of child pornography, including digital files. But under Hendley's interpretation of the warrant, no agent would be authorized to search any device, area, or object in Hendley's house for those digital files. This cannot be. An analogy highlights the fallacy of Hendley's logic. Under Hendley's interpretation, agents operating under the warrant in question here could enter Hendley's house and find a folder on a desk. According to Hendley, because the warrant did not specify that the folder was to be "searched," the agents would not be allowed to open the folder, even if it contained evidence of child pornography, until they obtained a second warrant.

Such an outcome undermines the Supreme Court's language in Ross, and cannot be the basis of a successful motion to suppress. See Ross, 456 U.S. at 820-21 ("A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search."). Agents executing a search warrant have the right to open containers in order to search for the items authorized in the warrant. See United States v. Rouse, No. CR409-004, 2009 WL 1550860, at *7 (S.D. Ga. June 1, 2009). Here, the warrant states that the agents were authorized to look for digital evidence of child pornography. Logic dictates that searching for digital files would require agents to access repositories that store digital information, including cell phones. The resulting search of Hendley's cell phone, therefore, was well within the bounds of the warrant.

Hendley's arguments fail in light of the plain language of the warrant and the severe limitation on all warrants which his approach invites. The objection to this section of Judge Anand's R&R is OVERRULED.

### B. Cell Phones and the Ross/Riley Decisions

Hendley next argues that Judge Anand's reliance on Ross is misplaced because "to apply this rule, founded long before cell phones came to be, to this very modern scenario is a mistake" [Doc. 49 at 22]. Instead, Hendley argues that the Supreme Court's recent discussion of cell phone searches in Riley v. California should inform this Court's decision. Hendley argues that while the Riley decision does not dictate the result, Judge Anand failed to consider

-10-

the discussion by Chief Justice Roberts that cell phones are different.

The Court agrees that cell phones are different. The modern smart cell phone contains vast stores of information. Yet the discussion of the nature of cell phones in <u>Riley v. California</u> does not go so far as to counsel this Court to rule that Judge Anand's analysis is incorrect.

The Supreme Court in <u>Riley</u> reviewed whether an officer may search a cell phone seized incident to an arrest without a warrant. In finding that such a search was illegal, the Court analyzed the traditional justifications for allowing warrantless searches incident to arrest and found that those traditional rationales, including loss of evidence of a concern that the arrestee may be armed, did not apply. 134 S. Ct. at 1285-88. The Court then explained what a unique device a cell phone was from a storage standpoint, and noted that "cell phones differ in both a quantitative and a qualitative sense from other objects that may be kept on an arrestee's person." <u>Id.</u> at 2489. The Court concluded by stating that "[o]ur holding, of course, is not that the information on a cell phone is immune from search; it is instead that a warrant is generally required before such a search, even when a cell phone is seized incident to arrest." <u>Id.</u> at 2493.

The analysis of the Supreme Court in <u>Riley</u> is illuminating, but the factual differences between <u>Riley</u> and the instant case are fatal to Hendley's claim. The decision in <u>Riley</u> explored the narrow confines of the "search incident to arrest" exception to the protections afforded by the Fourth Amendment. The Supreme Court's discussion of an individual not carrying on their person the physical

-11-

equivalent of all of the data, pictures, and videos which may reside on a cell phone does not transfer to a search authorized by a warrant of Hendley's house. In fact, the very records, pictures and videos that would not be on a person in <u>Riley</u> seem much more likely to be stored at an individual's home, just as Hendley's cell phone was here. And, most importantly, the agents here followed the advice of Chief Justice Roberts: they got a warrant. <u>Id.</u> at 2495.

In deciding <u>Riley</u>, the Supreme Court weighed the reduced privacy interests of an arrestee against the justifications of government officers in the context of a search incident to arrest. Here, Hendley's privacy interests in his cell phone were weighed against the justifications of the Government, resulting in the issuance of a warrant by a neutral magistrate. The analysis in the context of a warrant is a vastly different calculation of privacy rights, and while <u>Riley</u> deepens this Court's understanding and analysis of a cell phone search, the decision does not persuade the Court that the search was illegal. Accordingly, Hendley's objections based on <u>Riley</u> are OVERRULED.

### C. The Physical Extraction Performed on Hendley's Phone

Hendley's final objection concerns the physical extraction performed by Agent Brant on Hendley's phone. Hendley argues that at the time Agent Brant completed the logical extraction, the search of Hendley's cell phone concluded. Performing the physical extraction, according to Hendley, constituted a second search of the phone, for which Agent Brant did not have a warrant.

A search which exceeds the scope of the terms of a warrant may result in an unconstitutional seizure. <u>United States v. Jackson</u>, 120 F.3d 1226, 1228 (11th Cir. 1997). In performing a search within the

scope of a warrant, however, the search may be "as extensive as reasonably required to locate the items described in the warrant." United States v. Folk, 754 F.3d 905, 911 (11th Cir. 2014). The controlling question, therefore, is whether the second search was reasonable. United States v. Gerber, 994 F.2d 1556, 1559 (11th Cir. 1993).

Here, Agent Brant's decision to perform the physical extraction on Hendley's phone was a reasonable continuation of his initial search of the phone based on three considerations. First, Agent Brant explained that he did not have the cable with him which was necessary to perform the physical extraction. Given the vast array of cell phones available in the modern day, it is not unreasonable for Agent Brant to not bring a cable to search every possible type of phone. Agent Brant also explained that a physical extraction could take four to five hours to run. Requiring Agent Brant to remain on Hendley's property for the duration of that search would likely increase the intrusiveness of the search. See United States v. Schandl, 947 F.2d 462, 465-66 (11th Cir. 1991) ("Indeed, it might have been far more disruptive had the agents made a thorough search of each individual document and computer disc before removing it from [defendant's] home and office."). And, as Judge Anand points out in his R&R, a search of that duration may have been impractical given the energy demands on Agent Brant's equipment.

The final consideration that demonstrates the reasonableness of the search is Agent Brant's experience. According to his training, Agent Brant believed that multiple extractions needed to be performed on Hendley's phone because each extraction produces different results. Agent Brant specifically testified that "in a situation

-13-

like this, I would have gone to the case agent and said look, the logical extraction, there's nothing there, I can't see everything, this phone is supported for a physical extraction, and I would recommend we need to do that" [Tr. at 34]. Agent Brant's testimony demonstrates the decision to perform the physical extraction was reasonable based on both his training in accessing computer files and the inability to see all files on Hendley's phone.

Hendley presents no new factual arguments to dispute the reasonableness of Agent Brant's continued search, instead taking issue with Judge Anand's analogy of Hendley's search to Gerber.[2] Hendley instead analogizes his case to United States v. Keszthelyi, 308 F.3d 557 (6th Cir. 2002), in which a second search performed by agents was found not to be a continuation of the original, warrant-authorized search.[3] Hendley's argument, however, is unavailing. First, the United States Court of Appeals for the Sixth Circuit in Keszthelyi noted that the agents did not dispute that the original search of the residence was complete and thorough. Here, the testimony of Agent Brant demonstrates that, without the physical extraction, there would still be areas of Hendley's phone that were

---

[2] In Gerber, the United States Court of Appeals for the Eleventh Circuit reversed a district court order which suppressed evidence found when agents search the hood of a car. The search of the hood occurred three days after the initial search of the car because the agents could not open the hood and had to wait until the next business day for a mechanic. Gerber, 994 F.2d at 1557.

[3] Keszthelyi involved a search performed at an individual's residence pursuant to a search warrant, during which the agents failed to find any cocaine. Id. at 563. The next day, agents returned to the residence based on a strong feeling that "there was something there that had not been located." Id. Agents subsequently found cocaine behind the oven on the property. Id.

not searched. Second, the Sixth Circuit also noted that the Keszthelyi facts did not present a scenario where the agents were impaired from implementing the warrant. Here, Agent Brant testifies that both equipment issues and temporal considerations impaired his ability to run the physical extraction at Hendley's property. Finally, the agents in Keszthelyi were found to have no reasonable suspicion for the second search performed on the house, and instead relied upon the fact that an agent "felt that we had just not found something inside of that residence." Id. at 573. Here, the phone was the key to the Government's investigation. Agent Ashley's affidavit detailed that Hendley became involved in the Government's investigation when the Government discovered that an individual was distributing child pornography to an email address that was simply Hendley's phone number. In light of the importance of the cell phone, any inability to access all files on this phone would justify a deeper search of the device. Combining this with all the other reasonable bases for continuing the search, Hendley's analogy to Keszthelyi becomes too strained to change this Court's view of the search.

Judge Anand's original analysis of Agent Brant's search under Gerber was both sufficiently nuanced and legally sound. This Court agrees that the facts surrounding the physical extraction performed on Hendley's phone are more analogous to the search in Gerber, and are too dissimilar from the facts in Keszthelyi, to suppress the search. Hendley's objection to Judge Anand's analysis on the physical extraction is therefore OVERRULED.

## V.  Conclusion

In light of the discussion above, Defendant Thomas McLean Hendley's Objections to Magistrate Judge's Final Report and Recommendation [Doc. 49] are OVERRULED.  Finding no clear error in the remainder of Judge Anand's report, the R&R [Doc. 45] is ADOPTED IN FULL.

SO ORDERED this ___1___ day of December, 2015.

_____
ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE